Filed 6/27/14  In re C.B. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re C.B., a Person Coming Under the Juvenile Court Law. _____ THE PEOPLE,       Plaintiff and Respondent,       v. C.B.,       Defendant and Appellant. | H039614 (Santa Clara County Super. Ct. No. 3-11-JV-38000G) |

The District Attorney filed a juvenile wardship petition charging appellant C.B., a minor (hereafter, appellant), with conduct that would have constituted second degree robbery if committed by an adult.  (Pen. Code, § 212.5, subd. (c).)[1]  The District Attorney further alleged that appellant used a dangerous and deadly weapon—a knife—in the commission of the offense.  (§§ 667, 1192.7.)  At the time of the offense, appellant was a ward of the court on previously sustained petitions.  After a contested jurisdictional hearing, the juvenile court sustained the robbery count but made no finding on the

_____

[1] Subsequent undesignated statutory references are to the Penal Code.

weapon allegation.  The court continued appellant's wardship and found the maximum term of confinement to be nine years and three months.

On appeal, appellant contends his trial counsel provided ineffective assistance of counsel by failing to object to the introduction of inadmissible character evidence at the jurisdictional hearing.  We conclude the claim lacks merit and we will affirm the judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts of the Offense*

On February 2, 2013, appellant, who was on furlough from the William F. James Boys Ranch, went with two friends to San José to attend a birthday party for another teenager, G.C.  Also attending the party were two teenage boys—C.J. and K.N.—who testified for the prosecution.

C.J. and K.N. testified as follows:  At around 4:00 p.m. or 5:00 p.m., the boys were in the back yard smoking marijuana when appellant took out a black, flip-blade knife with a 3-inch blade.  Appellant pointed the knife at C.J., and took a bag of marijuana out of C.J.'s pocket.  While appellant held the knife at C.J.'s neck, he (appellant) searched through C.J.'s other pockets.  Appellant removed cash, headphones, and a small pocketknife from C.J.'s pockets, in addition to the marijuana.[2]  Appellant told C.J. not to snitch, and threatened to "rob [C.J.'s] house" if he told anyone about the robbery.  Before leaving the party, appellant gave the headphones back to C.J. at C.J.'s request.  The day after the party, appellant's sister retrieved C.J.'s pocketknife from appellant and gave it back to C.J.

Appellant's parents and siblings testified for the defense.  Appellant's mother testified that he was at home on the day in question, but she admitted that she had left the home for two hours around 3:30 p.m. to 5:30 p.m.  She took appellant back to the Boys

---

[2] At the hearing, C.J. testified that appellant took $20 in cash, but C.J. admitted that he had told the defense investigator appellant took $90.

2

Ranch at the end of the day and signed him in around 6:30 p.m. Appellant's father also testified that appellant was at home that day, but he (appellant's father) left the house with appellant's mother at 3:30 p.m. for two hours.

Appellant's brother testified that appellant was at home that day, and that he saw appellant approximately five to 10 times between 3:00 p.m. and 6:00 p.m. Appellant's parents had instructed appellant's brother to watch appellant to make sure he stayed at home, but appellant's brother admitted that he was in his room without appellant for much of the time. Appellant's sister testified that she saw him at home that day, but she left the home around 3:00 p.m. and spent the night elsewhere. She also testified that she did not return C.J.'s pocketknife to him.

B. *Procedural Background*

When cross-examining K.N., defense counsel elicited the following testimony:

"[Defense counsel:] [B]ecause of your experience with [appellant], you believe that [appellant's] a bad person?

"[K.N.:] Yes.

"[Defense counsel:] You think he's a violent person?

"[K.N.:] Yes.

"[Defense counsel:] You think he's a menace to society?

"[Prosecutor:] Objection. Argumentative.

"[Court:] Overruled.

"[K.N.:] Yes."

On re-direct examination, the prosecutor followed up this line of questioning as follows:

"[Prosecutor:] You testified on cross-examination that you had this feeling that [appellant] was kind of a 'violent menace' is the word?

"[K.N.:] Not a feeling but a fact.

"[Prosecutor:] Okay. So tell me about that. Why do you feel that is fact? What have you seen?

"[K.N.] I've seen him do loads of stuff, just something that someone my age or his age shouldn't be doing at that age.

"[Prosecutor:] Have you ever seen him with a gun?

"[K.N.:] One time.

"[Prosecutor:] Okay. Tell me about that.

"[K.N.:] Um, sawed-off 12-gauge shotgun.

"[Prosecutor:] What was he doing with it?

"[K.N.:] Absolutely nothing. Just had it for show.

"[Prosecutor:] Okay. Tell me about that situation. Was it at a party? Or were you hanging out?

"[K.N.]: It was the week before what happened with [C.J.]. He showed up at [G.C.]'s doorstep, and I don't remember what exactly happened in that day. All I know is that he showed up at his door, he had OT and he showed us the gun."[3]

Defense counsel lodged no objection during this line of questioning. During re-cross-examination of K.N., defense counsel again elicited K.N.'s testimony that appellant was a "violent . . . menace." In response to leading questions, K.N. testified that he did not want appellant to be released from the Boys Ranch. When the prosecution objected on relevance grounds, defense counsel argued that the questions were intended to demonstrate the witness's bias.

The prosecutor, in her direct examination of C.J., elicited similar testimony:

"[Prosecutor:] Have you ever seen [appellant] with a gun?

"[C.J.:] Yes, ma'am.

"[Prosecutor:] Tell me about how you saw [appellant] with a gun.

---

[3] The term "OT" referred to appellant's furlough time from the Boys Ranch.

"[C.J.:]  All right.  It was the OT.  The OT he was out before the one where he did that.  He had a double-barrel shotgun, 12-gauge, and I am unaware of how it looked like exactly, but the barrels were side by side, and I didn't really get a good glimpse of it because it's a gun, like it's nothing—if a kid has a gun, you don't really want to be around him looking at it.  It's nothing to be proud of."

Defense counsel lodged no objection.  In cross-examining C.J., defense counsel elicited the following testimony:

"[Defense counsel:]  And you've heard or you know that he—that he's been involved in some violent activity?

"[C.J.:]  Yeah.

"[Defense counsel:]  And you knew that he was locked up at the ranch facility?

"[C.J.:]  Yes.

"[Defense Counsel:]  And you know that he's currently in custody; is that right?

"[C.J.:]  Yes.

"[Defense counsel:]  And you feel that [appellant] is a violent person?

"[C.J.:]  Yes."

Defense counsel then posed several leading questions eliciting testimony from C.J. to the effect that C.J. wanted appellant to remain in custody at the Boys Ranch because C.J. believed appellant was violent, and C.J. did not want appellant in the neighborhood.  When the prosecution objected, defense counsel argued that "it goes to motive and bias against my client.  I think it's squarely relevant in this case."  In further argument, defense counsel reiterated this argument:  "I think that is squarely relevant to [C.J.'s] credibility and reliability as a witness in this case, and I believe that I should be permitted to cross-examine [C.J.] as it relates to his perspective of my client as it relates to motive and bias to perhaps fabricate claims in this type of case."  The court overruled the prosecutor's objection and allowed this line of questioning to continue.

5

At the conclusion of the hearing, the court sustained Count One of the petition. The court found that although the witnesses had presented some inconsistent testimony, the prosecution's witnesses were ultimately consistent and credible. The court explicitly declined to make any finding as to the weapon allegation. At the dispositional hearing, the court continued wardship, found the maximum term of confinement to be nine years and three months, and returned appellant to the Boys Ranch.

## II. DISCUSSION

Appellant contends his trial counsel provided ineffective assistance of counsel by failing to object to the introduction of "other acts" character evidence—specifically, the testimony by C.J. and K.N. stating that appellant had shown them a double-barreled, 12-gauge shotgun. Appellant argues this testimony should have been excluded under Evidence Code sections 1101 and 352.

Because the record shows defense counsel had a tactical reason to elicit testimony showing the witnesses feared appellant—testimony which then opened the door for the prosecution's introduction of the gun evidence—we conclude appellant's claim is without merit.

A. *Legal Standards for Ineffective Assistance of Counsel*

"To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. [Citations.] Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing professional norms. [Citation.] Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694 (*Strickland*).) " 'Finally, prejudice must be affirmatively proved; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

6

reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*People v. Bolin* (1998) 18 Cal.4th 297, 333.)

Tactical errors are generally not deemed reversible. (*People v. Klatt* (2014) 225 Cal.App.4th 906.) To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment unless counsel was asked for an explanation and failed to provide one, or unless there could be no satisfactory explanation. (*Id.*) Furthermore, "[i]t is the defendant's burden on appeal [. . .] to show that he or she was denied effective assistance of counsel and is entitled to relief. [Citations.] '[T]he burden of proof that the defendant must meet in order to establish his [or her] entitlement to relief on an ineffective-assistance claim is preponderance of the evidence.' [Citation.]" (*In re Hill* (2011) 198 Cal.App.4th 1008, 1016.)

B. *Application to Appellant's Claim*

As the record makes clear, it was *defense counsel* who first elicited testimony from K.N. stating that appellant was a "bad person," a "violent person," and a "menace to society."[4] Defense counsel explicitly argued that these questions were intended to demonstrate the witness's bias. Only after this testimony did the prosecutor question K.N. on the reasons for K.N.'s opinion—to wit, that K.N. had witnessed appellant with the shotgun. Similarly, when the prosecution questioned C.J. on the same topic, defense counsel followed up this line of questioning on cross-examination and elicited multiple statements from C.J. explaining why he feared appellant. When the prosecution objected, defense counsel explicitly stated that he had intentionally elicited this testimony to demonstrate the witness's bias towards appellant.

The record establishes that defense counsel had a purely tactical motive for not objecting to both witnesses' testimony concerning appellant's possession of the shotgun.

---

[4] These phrases are quoted from defense counsel's leading questions to K.N.

We decline to question the wisdom of counsel's tactical choices in this instance. Even if counsel had objected to the prosecution's questions concerning the shotgun, the objection would have been properly overruled, since counsel had "opened the door" to this testimony by putting the witnesses' perception of appellant's character at issue.[5] (*People v. Anderson* (2001) 25 Cal.4th 543, 587 [defense counsel does not provide ineffective assistance of counsel by declining to lodge a futile objection].) " 'It is well settled that when a witness is questioned on cross-examination as to matters relevant to the subject of the direct examination but not elicited on that examination, he [or she] may be examined on redirect as to such new matter.' " (*People v. Steele* (2002) 27 Cal.4th 1230, 1247-1248.)

For these reasons, we conclude appellant's claim is without merit.

### III. DISPOSITION

The judgment is affirmed.

_____
MÁRQUEZ, J.

We concur:


_____
RUSHING, P.J.


_____
PREMO, J.

---

[5] At oral argument, counsel for appellant argued that the court should have issued a limiting instruction as to the contested testimony. But there was no jury, and we see no justification for requiring a court to instruct itself.